**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ASTER GEBREMARIAM,
Petitioner,

v.

No. 97-2598

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-630-751)

Submitted: September 29, 1998

Decided: October 23, 1998

Before LUTTIG, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Bokwe Godwill Mofor, Silver Spring, Maryland, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Karen Fletcher Torstenson,
Assistant Director, Joan E. Smiley, Senior Litigation Counsel, Office
of Immigration Litigation, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Aster Gebremariam petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

To establish eligibility for a grant of asylum, an alien must demonstrate that she is a refugee within the meaning of the Immigration and Nationality Act ("the Act"). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998). Fears which may be well-founded, but do not arise on account of an applicant's race, religion, nationality, membership in a social group, or because of political opinion, do not qualify an alien as a refugee. See Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987).

For a claim of persecution based on political opinion to succeed, the record must compel the conclusion that the alien has expressed a political opinion, and that the alien has a well-founded fear of persecution specifically because of the political opinion. See INS v. Elias-Zacarias, 502 U.S. 478, 481-83 (1992); Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1342-43 (4th Cir. 1995). The alien bears the burden of proving that she is a refugee as defined by the Act. See 8 C.F.R. § 208.13(a) (1998).

The well-founded fear of persecution standard contains both an objective and a subjective element. The subjective element requires a genuine fear on the part of the alien. See Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts which would lead a reasonable person in like

2

circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992); M.A. v. INS, 899 F.2d 304, 311 (4th Cir. 1990). The alien does not need to show that she would be singled out individually if she can show: (1) a pattern or practice of persecuting groups of persons similarly situated and (2) his own identification with such a group such that his fear of persecution upon return is reasonable. See 8 C.F.R.§ 208.13(b)(2) (1998).

We must uphold the Board's determination that Gebremariam is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Gebremariam] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Elias-Zacharias, 502 U.S. at 481.

Gebremariam, who entered the United States in November 1992 as a visitor for pleasure and overstayed her six-month visa, disagrees with the Board's finding that she failed to qualify for asylum and withholding of deportation. After a thorough review of the administrative record, we conclude that substantial evidence supports the Board's finding that Gebremariam did not satisfy her statutory burden.

Evidence established that Gebremariam, a native and citizen of Ethiopia, worked at the Ministry of Mines and Energy in Ethiopia as a geologist from 1985 to 1989. She moved to England in 1989 to study at the University of Leicester on a scholarship provided by the European Economic Commission (EEC). Gebremariam did not suffer any persecution under the regime of dictator Mengistu Haile Mariam

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

prior to her departure from Ethiopia. Also, for the first six months of her stay in England, her family continued to receive payments for work she had done as a geologist. Gebremariam testified that she came to the United States because she had more friends in the United States than she had in England.

In declining to find Gebremariam eligible for asylum, the Board noted that the current Ethiopian government, which is controlled by the Ethiopian People's Revolutionary Democratic Front (EPRDF), had no interest in punishing Gebremariam as late as August 1992, when it granted her a renewal of her passport at its London embassy so that she could continue traveling abroad from England. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir. 1988) (explaining that a government-issued passport undercuts an alien's claim of a well-founded fear of persecution). The Board also noted, however, that it was also in August 1992 that Gebremariam joined the Medhin party, an organization that advocates the violent overthrow of the Ethiopian government. Thus, the Board recognized that Gebremariam may now face criminal investigation and prosecution upon her return to Ethiopia, but the Board found that this evidence does not necessarily support her request for asylum or withholding of deportation. See M.A., 899 F.2d at 312.

Although the Board recognized that prosecution for an offense may be a pretext for punishing an individual for her political opinion or one of the other grounds protected under the Act, the Board was not persuaded that Gebremariam would be subject to disproportionate punishment for her political activities in opposition to the EPRDF, which have all been conducted in the United States and England. The Board relied on the advisory opinion of the Department of State's Bureau of Democracy, Human Rights and Labor (DRL), dated July 1995, which states that there are few reports, none confirmed, of members of exile groups facing prosecution upon returning to Ethiopia for anti-government activities conducted overseas. The DRL also relates that the current Ethiopian government continues to state that any group or individual that has never advocated violence or is willing to forswear violence as a political tactic in Ethiopia may function freely.

With regard to Gebremariam's activities in the United States, the Board noted that she discontinued her membership in Medhin because

4

it is an organization dedicated to the violent overthrow of the government and she is opposed to violence. She has also participated in two political demonstrations. She has typed articles and provided other assistance for the Ethiopian Register, a magazine banned in Ethiopia. Currently, however, she does not belong to any particular opposition group or engage in any other activities to indicate that she would be considered a prominent opposition figure. Based on this evidence, the Board held that Gebremariam does not have a well-founded fear of persecution based on her political opinion within the meaning of the Act.

On appeal, Gebremariam claims that the Board applied an incorrect legal standard by holding that a government issued passport undercut's her fear of persecution. As Gebremariam notes, evidence of a valid passport or remaining in a country unharmed before fleeing does not necessarily indicate lack of fear of persecution. See Perkovic v. INS, 33 F.3d 615, 623 n.7 (6th Cir. 1994); Cordero-Trejo v. INS, 40 F.3d 482, 490 (1st Cir. 1994). However, the Board in denying Gebremariam's application for relief relied only partly, not solely, on evidence that the current Ethiopian government renewed her passport in 1992.

Gebremariam also contends that the Board erred in holding that she was firmly resettled in England. An applicant is firmly resettled if, "prior to arrival in the United States, [she] entered into another nation with, or while in that nation, received an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 208.15 (1998). To avoid a finding that an applicant has firmly resettled elsewhere, the applicant must establish "[t]hat the conditions of her residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled." 8 C.F.R. § 208.15 (1998). The IJ considers, among other factors, the types and extent of the employment available to the refugee and the extent to which the refugee enjoyed other rights and privileges, such as travel documentation including a right of entry and/or reentry, education, ordinarily available to other residents in the country. See id.

Based on the evidence in the record, the Board agreed with the IJ's finding that Gebremariam was firmly resettled in England prior to her

5

arrival in the United States. She resided in England for over three years, enjoyed at least the status of a student and received funds from the EEC, and was able to work as a curator and a research assistant even after her graduation from the University of Leicester. Furthermore, Gebremariam was allowed to return to England after trips to Canada and "other countries." She testified that she came to the United States to "have a break and visit" her friends and relatives, which indicates that she could have returned to England had she so desired. The Board further found, based on her testimony, that when Gebremariam decided to seek asylum, she considered returning to England, but chose to remain in the United States. In light of the considerations listed in 8 C.F.R. § 2098.15(b), there was substantial evidence to support the Board's determination that Gebremariam was resettled in England.

Lastly, Gebremariam contends that the Board accorded too much weight to the State Department's Human Rights Report and virtually ignored other human rights reports. However, the Board had the discretion to accord great weigh to the State Department's report. See Mitev v. INS, 67 F.3d 1325, 1332 (7th Cir. 1995) (giving great weight to State Department's opinions on matters within its area of expertise). We find that substantial evidence supports the Board's finding that Gebremariam was ineligible for a grant of asylum.

Gebremariam also insists she qualified for withholding of deportation. The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the Board's finding that Gebremariam is ineligible for asylum, she cannot meet the higher standard for withholding of deportation. Accordingly, we affirm the Board's order.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6